Kuhn v. Kuhn.

---

No. 22,798.

MAGGIE KUHN, and ELMER KUHN, by his Guardian and Next Friend, MAGGIE KUHN, *Appellees,* v. BARBARA KUHN, JOE KUHN, and FRANK KUHN, *Appellants.*

SYLLABUS BY THE COURT.

1. ORAL CONTRACT—*Title in Lands—Possession—Permanent Improvements—Specific Performance of Contract.* The rule that an oral agreement for acquiring the full title to a tract of land by one who already owns an undivided interest in it cannot be taken out of the operation of the statute of frauds by reason of his improvements, because his possession must be regarded as that of a cotenant under his original right, is not absolute. His occupancy may be exclusive and for that reason referable to the contract. And it is held that in the present

case the petition showed possession under such circumstances as to justify the enforcement of an oral contract on account of permanent improvements having been made in reliance upon it.

2. SAME—*Enforcement of Contract—Pleadings.* A petition for the enforcement of a contract for the division of land, held not to be fatally defective in failing to allege the making of payments accruing after its taking effect.

3. SAME—*Pleadings—Allegations Construed.* Allegations that a deed was executed after an agreement concerning the land described had been made, and that it conveyed the grantor's title, are held to be qualified by a further averment that it was executed in pursuance of the contract.

Appeal from Trego district court; ISAAC T. PURCELL, judge. Opinion filed July 10, 1920. Affirmed.

*Herman Long,* of Wa Keeney, for the appellants.
*E. A. Rea,* of Hays, for the appellees.

The opinion of the court was delivered by

MASON, J.: Maggie Kuhn, and Elmer Kuhn, the widow and only child of John Kuhn, jr., brought this action against his mother and two brothers, the purpose being to quiet the title of the plaintiffs to land which they claimed to own by virtue of an oral agreement between John Kuhn, jr., and the defendants, which had been partly performed. The suit may perhaps be regarded as in the nature of one for the specific performance of the contract. A demurrer to the petition was overruled, and the defendants appeal, the principal question involved being whether it sufficiently appears that the contract, although not in writing, was rendered enforceable by part performance.

The allegations of the petition may be thus summarized: John Kuhn, sr., died owning a quarter section of land in Trego county worth $1,720 and two quarters in Ellis county worth respectively $5,620 and $5,120. His will devised 240 acres to his wife, Barbara, to be selected by her, and 80 acres to each of his three sons, John, jr., Frank and Joseph, to be divided as the widow should deem best. She selected as her allotment the quarter in Ellis county referred to as worth $5,620, and the north half of the Trego county quarter. The remaining 240 acres not being capable of convenient division into three parts

of approximately equal value, an agreement was entered into between the widow and three sons to this effect: Of the three eighties left after the widow's selection for her own share had been made, the two in Ellis county were to be owned by Frank and Joseph. John, jr., was to have the one in Trego county, and in addition thereto the eighty in that county which had previously been selected by his mother, and an additional adjoining eighty to be purchased by her and Frank and Joseph. During her life the legal title to all this Trego county land was to be in the mother, and she was to receive one-fourth of the crop raised on the newly acquired eighty. In pursuance of this agreement the additional eighty was purchased, the legal title being taken in the mother; John, jr., went into possession of the Trego county land, expending $3,000 in lasting and valuable improvements thereon; and he joined with his brothers in a quitclaim deed to his mother covering all the land referred to, in both counties. On the death of John, jr., the plaintiffs succeeded to his rights. His mother denies that they have any interest in any of the land.

1. A partial performance which includes the making of permanent improvements may take an oral agreement out of the operation of the statute forbidding the parol creation of a trust in lands (Gen. Stat. 1915, § 11674) as well as of that requiring contracts for the sale of realty to be in writing (Gen. Stat. 1915, § 4889). (*Goff v. Goff,* 98 Kan. 201, 158 Pac. 26; *Oberlender v. Butcher,* 67 Neb. 410.) The defendants do not question this, but argue that improvements made upon land by one who was already the owner of an undivided interest therein cannot affect the operation of either statute, because they must necessarily be referred to his preëxisting ownership of a part, and not to an oral arrangement for his becoming the owner of the remainder; and that this principle controls here because John Kuhn, jr., was a tenant in common of the Trego county land which his father had owned, and the improvements were made upon that tract. The general rule stated by the defendants finds at least apparent support in a part of the opinion in *Nay v. Mograin,* 24 Kan. 75.

In that case a mother and her three minor children had owned a tract of land, each having an undivided one-fourth interest. It had passed into the possession of other persons.

The mother brought action for her one-fourth. The defendants claimed full title under a deed from the children and an oral purchase from the mother, supported by possession and improvements. The trial court found for the plaintiff, and as there was no special finding to the contrary, this, if necessary to uphold the judgment, implied a decision against the defendants upon the issue of fact as to whether the improvements had been made in reliance upon an oral contract for the mother's share. The judgment was affirmed, the court indicating that the defendants were foreclosed by the decision against them on the facts, but discussing also the rule already referred to as applied to the situation there presented. The portion of the opinion relating to this phase of the matter reads:

"The fact that no other deeds were given, makes strongly against their [the defendants'] claim of a purchase of plaintiff's interest in the land. And evidence to sustain a parol purchase of land must be clear and positive.

.  .  .  .  .  .  .  .  .  .  .  .  .

"But conceding their understanding of the purchase to be correct, the statute of frauds interposes against them. They bought and paid; they took possession and improved. But payment will not take a parol purchase out of the statute of frauds; and possession and improvement must be referred to, and will be upheld under the written title they accepted. As purchasers of the minors' interests, they had a right to the possession, and might lawfully enter and improve. They became tenants in common with plaintiff, with equal right to enter. No action of trespass would lie against them. (*Edwards v. Fry*, 9 Kan. 417.) 'What, then! it may be asked,' said Woodward, J., in *Workman v. Guthrie*, 29 Pa. St. 495, 'can there be no sale of land by parol among tenants in common where all are in possession? Certainly not, because the statute of frauds and perjuries forbids, and there cannot be such part performance as would take it out of the operation of that wise and salutary rule of titles.'

.  .  .  .  .  .  .  .  .  .  .  .  .

"So, where a party enters upon land under a written instrument purporting to convey the title of certain joint owners, he may not, upon a failure of the title thus conveyed, uphold a parol purchase from another joint owner by his entry and improvements. That which he does as an owner must be referred to that which apparently made him an owner. Part performance to uphold a parol purchase must be exclusive; must be referable solely to such purchase.

.  .  .  .  .  .  .  .  .  .  .  .  .

"We think it would be going much beyond established limits to enforce a parol purchase of an undivided interest in land upon the strength

of part performance, when there was a written conveyance intended as a conveyance of the larger interests in the land, under which possession was in fact taken and improvements made. The melioration of the estate will be presumed to have been made on the faith of the title apparently conveyed. Acts which presume a conveyance will be referred to the conveyance, and that irrespective of the validity of that conveyance. We conclude, then, that both upon the findings and the testimony, the judgment of the district court was right." (*Nay v. Mograin,* 24 Kan. 75, 78-80.)

It will be observed that the controversy as to whether the improvements were made in reliance on the oral contract was essentially one of fact, the decision being made on that basis. If the language used be regarded as supporting the view that improvements made by the owner of an undivided interest may never be referred to an oral contract for title to the remainder, it is out of harmony with the weight of authority. (36 Cyc. 666; 2 Reed on the Statute of Frauds, § 583; 5 Pomeroy's Equity Jurisprudence, § 2241, p. 5008, note 16. See, also, *Savage v. Lee et al.,* 101 Ind. 514.) In two of the texts cited, the doctrine of the impossibility of part performance of a parol sale by one cotenant to another is referred to as peculiar to Pennsylvania. As is pointed out in *Emery v. Dana,* 76 N. H. 483, inasmuch as one cotenant may take possession to the exclusion of the others, so that his holding becomes adverse as to them, such an occupancy accompanied by permanent improvements should be sufficient to take an oral contract out of the statute of frauds. Here the petition alleged that pursuant to the agreement referred to, John Kuhn, jr., with his family, moved upon the Trego county land in 1915, and placed the improvements thereon. The allegation is to be liberally construed and must be deemed to indicate that his possession was exclusive. Moreover, his relations to the property left by his father were quite different from those of an ordinary cotenant. After his mother had selected her own share he no longer had any interest in the north half of the quarter section in Trego county. His rights with respect to the quarter section in Ellis county which she had not taken were qualified by the power given her to determine the apportionment among her three sons. In these circumstances the moving upon the Trego county land by John, jr., implying its treatment as a single tract, suggested a readjustment of the interests of the

devisees—the distribution of his father's land upon a different basis from that provided in the will. We conclude that the allegations of the petition were sufficient to render the oral agreement enforceable on the theory of a part performance. The allegations of the petition bring the case fully within the reasons of the rule permitting contracts otherwise unenforceable because not in writing to be given effect by reason of having been partially performed. If the plaintiffs' predecessor in interest gave up his claims to the Ellis county land and in lieu thereof accepted the 240 acres of cheaper land in a body in Trego county, and in reliance on the agreement spent $3,000 in permanent improvements, it would be a fraud upon their rights to deny them relief because no writing had been signed. The contract alleged is obviously entire, and improvements upon any part of the 240 acres might afford a basis for its enforcement.

The defendants argue that the statement of the petition that during the lifetime of his mother, John, jr., was to pay her one-fourth of the crop raised on the additional eighty-acre tract shows that his occupancy was that of a tenant. If that would be the inference from this allegation standing alone it must yield to express averments to the contrary found in the pleading.

2. It is also contended that the petition is defective in not alleging that the fourth part of the crop on the additional eighty has been paid to the testator's widow as required by the agreement pleaded. This payment was not of a part of the price to be paid for the land at the time of its purchase in such sense as to bring it within the rule making it a condition precedent to the enforcement of the contract.

3. The petition referred to the quitclaim deed to his mother as having been executed by John Kuhn, jr., after the improvements had been made, and as conveying all his interest in the land. The defendants seek to give this an interpretation indicating an actual transfer of the title independent of and subsequent to the contract. The deed is pleaded as having been executed in pursuance of the oral agreement, and no forced construction is required to interpret the petition as meaning that the agreement included a provision for the giv-

ing of this deed, to be effective as though made at once, in order to lodge formal title in the grantee for the purposes indicated.

The judgment is affirmed.