No. 33,344

FRANKLIN G. HORSLEY, *Appellee*, v. PADEN HRENCHIR and PERMIN HRENCHIR, *Appellants*.

(73 P. 2d 1010)

December 11, 1937. Opinion filed

*J. E. Addington* and *Howard A. Jones*, both of Topeka, for the appellants.
*A. C. Wilson*, of Oskaloosa, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This is an appeal from an order overruling the demurrer of the defendants to the plaintiff's amended petition.

The petition alleges that Benjamin Franklin Bailey died intestate April 11, 1909, leaving as his sole and only heirs at law Margaret A. Bailey, his widow, Mayma Bailey and Paden Bailey, his daughters, and that at the time of his death he was the owner of the real estate in question. Upon the death of Benjamin Franklin Bailey his widow, Margaret A. Bailey, became the owner of an undivided one-half interest in the real estate, and the daughters, Mayma and Paden, each became the owners of an undivided one-fourth interest therein; that no division of the real estate has ever been had, and that it was occupied by the widow during the remainder of her life. The daughter Mayma Bailey later married W. C. Horsley, and the daughter Paden Bailey later married Permin Hrenchir.

On November 14, 1911, Mayma Bailey Horsley and her husband, W. C. Horsley, conveyed, by quitclaim deed, the undivided one-fourth interest of Mayma Bailey Horsley to Margaret A. Bailey, which deed was duly filed for record.

The petition further alleged that the conveyance was without consideration and "upon the express oral agreement with the said Margaret A. Bailey that she would hold said interest in trust for Mayma Bailey Horsley, along with the other undivided interests in said real estate until the time of her death, when the whole tract of land above described should descend to her daughters, the said Mayma Bailey Horsley and Paden Bailey Hrenchir"; that on July 25, 1921, without the knowledge or consent of Mayma Bailey Horsley or her husband, W. C. Horsley, and in violation of said trust agreement, Margaret A. Bailey conveyed, by warranty deed, the above-described real estate to her daughter Paden Hrenchir, which deed was filed for record August 14, 1924.

The petition further alleges that the conveyance to Paden Hrenchir was without consideration, and procured by fraud and undue influence exercised upon Margaret A. Bailey by Paden Hrenchir and her husband, Permin Hrenchir, and that on the 3d day of August, 1924, Margaret A. Bailey died intestate, leaving as her sole and only heirs at law, Mayma Bailey Horsley and Paden Bailey Hrenchir; that on August 30, 1931, Mayma Bailey Horsley died intestate, leaving as her sole and only heirs at law her husband, W. C. Horsley, and a son, Franklin G. Horsley, the plaintiff.

The petition then alleges the conveyance, by quitclaim deed, by W. C. Horsley to Franklin G. Horsley, the plaintiff, placing the entire interest, if any there is, arising out of the oral trust agreement,

in the plaintiff, Franklin G. Horsley. This deed was also filed for record; that on account of the trust agreement the plaintiff Franklin G. Horsley and the defendant Paden Hrenchir are the absolute owners of the real estate in question, each being the owners of an undivided one-half interest.

For his second cause of action plaintiff prays for partition.

Section 182 of the Restatement of Restitution and Unjust Enrichment reads as follows:

"Where the owner of an interest in land transfers it *inter vivos* to another upon an oral trust in favor of the transferor or upon an oral agreement to reconvey the land to the transferor, and the trust or agreement is unenforceable because of the statute of frauds, and the transferee refuses to perform the trust or agreement, he holds the interest upon a constructive trust for the transferor, if—

(a) the transfer was procured by fraud, misrepresentation, duress, undue influence or mistake of such a character that the transferor is entitled to restitution, or

(b) the transferee at the time of the transfer was in a confidential relation to the transferor, or

(c) the transfer was made as security for an indebtedness of the transferor.

"*Caveat:* The Institute takes no position on the question whether the transferee holds upon a constructive trust for the transferor an interest in land transferred to him *inter vivos*, where he orally agreed with the transferor to hold it in trust for the transferor or to reconvey it to the transferor, except under the circumstances stated in this section."

The Kansas rule is in accordance with the restatement above quoted. The petition does not allege the transfer from the daughter to her mother was procured by fraud, misrepresentation, duress, undue influence or mistake. It does not allege that the transferee at the time of the transfer was in a confidential relation to the transferor, nor that the transfer was made to secure a debt. The case therefore falls within the statute of frauds (G. S. 1935, 67-210), according to the settled rule long adhered to by this court. (*Morrall v. Waterson,* 7 Kan. 199; *Ingham v. Burnell,* 31 Kan. 333, 2 Pac. 804; *Gee v. Thrailkill,* 45 Kan. 173, 25 Pac. 588; *Rogers v. Richards,* 67 Kan. 706, 74 Pac. 255; *Blackwell v. Blackwell,* 88 Kan. 495, 129 Pac. 173; *Clester v. Clester,* 90 Kan. 638, 135 Pac. 996; *Goff v. Goff,* 98 Kan. 201, 158 Pac. 26; *Bolin v. Krengel,* 116 Kan. 459, 227 Pac. 266; *Mullen v. Hume,* 130 Kan. 240, 285 P. 2d 626.)

Appellee relies upon *Smith v. Nyburg,* 136 Kan. 572, 16 P. 2d 493; *Stahl v. Stevenson,* 102 Kan. 447, 171 Pac. 1164, and other cases of similar type. Cases where the owner of property has entered into

an agreement to devise property for services rendered are very numerous. In this situation the court is interested in the doctrines of part performance and specific performance. In such cases the promisee may bring an action in the nature of an action for specific performance, and where the proof is ample the court will give relief by impressing a trust on the heirs or devisees of the promisor in favor of the promisee. These cases are not in point in this controversy.

We think the court was in error in overruling defendants' demurrer. The judgment must be reversed. It is so ordered.

ALLEN, J. (concurring specially): The daughter transferred the property to her mother upon an oral agreement to hold in trust for the daughter and to be returned to the daughter by intestate succession. It is admitted that under the great weight of authority the transferee may retain the property. The majority of the Kansas cases so hold, but we have held that the transferee holds the property upon constructive trust for the transferor. (*Hunnicutt v. Oren*, 84 Kan. 460, 114 Pac. 1059.) Our statute G. S. 1935, 67-210, provides that, "Declarations or creations of trusts or powers, in relation of real estate, must be executed in the same manner as deeds of conveyance; but this provision does not apply to trusts resulting from the operation or construction of law."

Where land is conveyed on oral trust in favor of the transferor, or upon oral contract to reconvey to the transferor, and where the transferee, relying on the statute of frauds, refuses to perform the trust, the English courts raise a constructive trust in favor of the transferor. (*Davies v. Otty*, 35 Beav. 208.) The English court said, "It is not honest to keep the land." (p. 213.)

Few will deny that to allow the transferee to keep the land would result in the unjust enrichment of the transferee.

Where the owner of land transfers it to another as security for a debt, although the deed is absolute on its face, the statute of frauds does not prevent the showing of the oral agreement. (*Glynn v. Building Association*, 22 Kan. 746; *LeComte v. Pennock*, 61 Kan. 330, 59 Pac. 641; *Hegwood v. Leeper*, 100 Kan. 379, 164 Pac. 173; *Brinkerhoff v. Bank*, 109 Kan. 700, 205 Pac. 779.)

"There would seem to be on principle, however, just as much objection to the proof of an oral mortgage as to the proof of an oral trust. Indeed, the unjust enrichment is greater in the case of an oral trust than in the case of an oral mortgage; for if no relief is given in the former case, the whole of the

property is lost, while in the latter case only the value above the amount of the debt is lost." (Scott, Conveyances upon Trusts not Properly Declared, 37 Harvard Law Review, 653, 663.)

Again, if it is shown there was a confidential relationship between the parties, as in *Silvers v. Howard*, 106 Kan. 762, 190 Pac. 1, the court will compel restitution by raising a constructive trust. The same is true if the transfer was secured by fraud, duress or mistake. If it is possible to show the oral agreement in such cases, no valid reason has been given why the statute of frauds should forbid showing the oral trust to prevent unjust enrichment.

If *A* transfers land to *B* upon an oral trust to hold for or to reconvey to *A*, or to die intestate so that *A* could acquire the land by intestate succession, it is clear that *A* cannot enforce the express trust because of the statute of frauds. But *B* ought not to be allowed to retain *A's* land and thus by his breach of faith to enrich himself at the expense of *A*. If he will not perform the express trust, he should be compelled to reconvey the land to *A*. (Ames, Lectures on Legal History, pp. 425, 427.) The fact that *A* would get the same relief by enforcing a constructive trust that he would get by enforcing the express trust is purely an accidental circumstance. There are many cases where the terms of the express trust might be different. (Thus, if *A* transfers land to *B* upon an oral agreement to convey to *C*, the express trust is in favor of *C*, but should *B* refuse to perform his agreement the constructive trust should be declared for *A*.)

In 3 Bogert on Trusts and Trustees, section 497, it is said:

"The party who has made a voidable or unenforceable promise is permitted by the legislature to set up the statute and avoid performance of his promise. That is a lawful act, which of itself should not be regarded as a basis for any equitable relief. But it does not follow that, because the promisor may avoid performance of his promise by use of the statute, he may also keep what he has received on the strength of a belief that the promise will be performed. To allow him to keep such a payment or other consideration would be giving the promisor something for nothing, would be unjustly enriching him at the expense of the promisee. It would be according to the statute of frauds the unnecessarily severe meaning that the promisee not only gets no performance of the promise, but also forfeits as a kind of penalty whatever he may have advanced in order to secure the making of the oral promise." (p. 1607.)

From the *caveat* to the Restatement of Restitution and Unjust Enrichment it appears the American Law Institute takes no position on the question here presented. To prevent the unjust enrich-

ment of the original grantee, and to those who take under her with notice, it would seem that a constructive trust should be declared. If the agreement relates to personal property of great value, there is no difficulty in enforcing it as an express trust. It seems strange that where twenty-two acres of land is involved, as in this case, a court of equity cannot compel restitution. We cannot enforce the express trust, but we can do justice by raising a constructive trust.

By a long line of cases it seems settled in this state that the transferee can keep the property. One reason given is that "deeds would no longer be valuable as muniments of title." (p. 768.) (*Silvers v. Howard,* supra.) The reason given seems unsubstantial, for it would prevent enforcing restitution when a transfer of land was procured by fraud, misrepresentation, mistake, duress, undue influence, or where the transfer was made as a security transaction. But in any view of the question it must be conceded that the rule followed in this case is too firmly established to be departed from at this late day.