No. 31,824

VINA V. GRAY, and CLARENCE DEVERE GRAY, a Minor, by VINA V.
GRAY, His Next Friend, *Appellees*, v. RALPH GRAY and PEARL
GRAY, *Appellants*.

(38 P. 2d 141)

Opinion
filed December 8, 1934.

*David Ritchie,* of Salina, for the appellants.
*H. McCaslin,* of Osborne, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is an action by the widow and minor child of
Clarence L. Gray, deceased, to set aside a deed to an undivided half
interest in certain real property, executed by Clarence L. Gray and
wife shortly before his death, to his brother, Ralph Gray, and for
the partition of the property. The trial court made findings of fact
and concluded the deed should be set aside, and rendered judgment
accordingly. The defendants have appealed.

The findings may be summarized as follows: Clarence L. Gray
and Ralph Gray were brothers. Their mother died November 24,
1932, and by her will devised to them the land in controversy, share
and share alike. Because of some domestic differences Clarence
L. Gray and his wife, Vina V. Gray, in May, 1931, had executed an
agreement by which she was to have certain household goods and
$350, which he was to pay her, and the custody of their minor child,
Clarence DeVere Gray. This agreement obviously was in contem-
plation of divorce, which neither of them obtained, or applied for;
it did not attempt to settle as between them right of inheritance.
After this agreement was executed Clarence L. Gray and his wife
did not live together as husband and wife, except for about a week,
before he was taken to the hospital at Salina early in December,
1932. During that week she cared for him at her home. She had
him taken to the hospital and visited him almost daily while he
was there, and also at the home of his brother Ralph, where he was
taken from the hospital, until his death, January 17, 1933. After

about the first of December, 1932, Clarence L. Gray was physically incapacitated from attending to his business affairs, and as a result of his sickness his reasoning powers and memory were seriously impaired, he being in the last stages of sickness with Bright's disease. He had an automobile wrecking business at Junction City, where he bought and wrecked old cars and sold used cars and parts and old and new casings. While in the hospital at Salina he owed a bank, or banker, at Junction City, and perhaps other bills, and his hospital expenses were accumulating. These matters worried him. Aside from his wife and son his only near relative was his brother, Ralph Gray, in whom he reposed full faith and confidence. While he was at the hospital, and about December 10, 1932, Clarence L. Gray and his brother, Ralph Gray, entered into an oral agreement by the terms of which Clarence L. Gray was to deed to Ralph Gray his undivided half interest in the land in question for the purpose of enabling Ralph Gray to borrow money on the land and pay the debts and hospital expenses of Clarence L. Gray. Pursuant to this agreement the deed in question was executed without any consideration other than that Ralph Gray was to borrow money on the land and pay the debts and expenses of the last sickness of Clarence L. Gray. At the time the deed was executed Clarence L. Gray had sufficient mental capacity to understand that he was making a deed to his brother, Ralph Gray, by which he was conveying to Ralph Gray the share in the land in question devised him by his mother, for the purpose of having his own debts and obligations paid by making it possible for Ralph Gray to borrow money on the land in question for the purpose of paying such obligations. The deed was in form a general warranty deed for an undivided one-half interest in the land in question. It was executed and acknowledged by Clarence L. Gray and Vina V. Gray, his wife, delivered to Ralph Gray, and by him placed of record. Ralph Gray made no false or fraudulent statement or representation to Clarence L. Gray or to his wife for the purpose of inducing them to execute the deed. Thereafter Ralph Gray went to Junction City, took charge of the business of Clarence L. Gray there, took into possession all the personal property of Clarence L. Gray, disposed of part of it, and paid some of his obligations, the amount of which is not shown. Ralph Gray has borrowed no money on the land in question, and the total amount he has paid out on behalf of Clarence L. Gray, either before or since his death, does not exceed $15. The court found it im-

possible for Ralph Gray to borrow money on the land in question to pay the obligations of Clarence L. Gray. Ralph Gray claims this is because the widow and minor son of Clarence L. Gray are claiming some interest in the land, but the court did not find that as the reason for his inability to borrow money on the land.

The defendants, Ralph Gray and wife, moved for judgment in their favor on the findings of fact made by the court. The motion was denied. They contend this was error. They argue these findings show an oral express trust with respect to what Ralph Gray was to do with the land, and that such a trust can be created only in writing (R. S. 67-401). They point out that the deed contained covenants of general warranty; that Clarence L. Gray had sufficient mental capacity to know what he was doing when it was executed, and that no false or fraudulent statements or representation were made by Ralph Gray to induce Clarence L. Gray and wife to execute the deed. They cite and rely on *Gee v. Thrailkill,* 45 Kan. 173, 25 Pac. 588, and allied cases; *Rogers v. Richards,* 67 Kan. 706, 74 Pac. 255; *Blackwell v. Blackwell,* 88 Kan. 495, 129 Pac. 173; *Engelbrecht v. Herrington,* 103 Kan. 21, 172 Pac. 715, and *Vaughn v. Cass,* 131 Kan. 837, 293 Pac. 487.

This argument overlooks the 'fiduciary relation of the parties found by the court, by reason of which a trust is implied, which need not be in writing under the statute cited. *(Rayl v. Rayl,* 58 Kan. 585, 50 Pac. 501.) In *Miller v. Henderson,* 140 Kan. 46, 33 P. 2d 1098, it was held:

"A fiduciary relation may exist in cases where there had been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence." (Syl. ¶ 1.)

See, also, *Lindholm v. Nelson,* 125 Kan. 223, 264 Pac. 50, and authorities cited in these cases.

Here the court found facts which established such a relation. Clarence was in the later stages of a prolonged and fatal illness. Obviously his business at Junction City had not been especially prosperous, for he was in debt there. He had become incapacitated for transacting business. He turned first to his estranged wife, who took him in, cared for him for a time, then took him to a hospital, where he could receive care. But his financial obligations and incurring expenses worried him. Less than a month before his

mother had died, leaving him a half interest in certain land, which it was possible might be handled in a way to relieve his stressed financial condition. He turned to his brother, his only near relative other than his wife and minor son, a brother in whom he "reposed full faith and confidence," with whom he discussed the matter. Clarence had only an undivided half interest in the land. In order that Clarence might have money to meet his pressing obligations and to care for him in his sickness Ralph agreed to take title to the land, borrow money on it and pay these obligations accrued and accruing. The conveyance was made for that sole purpose. Ralph made no false statement to induce Clarence and his wife to execute the deed. At the time, no doubt, he fully intended to carry it out. But he has not done so, and the court finds it is not possible for him to do it. Under such circumstances his retaining title to this land is just as detrimental to the interests of plaintiffs as though he had induced the execution of the deed by fraudulent representation. In such a situation a trust by implication of law arises. The situation is much like that in *Lehrling v. Lehrling,* 84 Kan. 766, 115 Pac. 556. (See, also, *Bartholomew v. Guthrie,* 71 Kan. 705, 81 Pac. 491; *Silvers v. Howard,* 106 Kan. 762, 190 Pac. 1; *Small v. Small,* 107 Kan. 122, 190 Pac. 623.)

In the Silvers case the court, with extraordinary diligence in the examination of authorities and clarity in pointing out distinctions, treated the question with a fullness which need not here be undertaken. Ralph Gray paid nothing for the title to this land, and apparently is in no position to do so. To set aside this deed places him in no worse position than he was before it was executed.

We see no error in the record. The judgment of the court below is affirmed.